AO 91 (Rev. 11/82)

# CRIMINAL COMPLAINT

| UNITED STATES DISTRICT COURT | CENTRAL DISTRICT OF CALIFORNIA |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>SONY DONG and QUANG TRUONG | DOCKET NO.<br><br>MAGISTRATE'S CASE NO.<br>**16-2371M** |

Complaint for violation of Title 18, United States Code, Sections 545, 2(b) (unlawfully importing, and causing the unlawful importation of, merchandise into the United States contrary to law)

| NAME OF MAGISTRATE JUDGE<br>HONORABLE PAUL ABRAMS | UNITED STATES<br>MAGISTRATE JUDGE | LOCATION<br>Los Angeles, California |
|---|---|---|

| DATE OF OFFENSE<br>December 3, 2016 | PLACE OF OFFENSE<br>Los Angeles County | ADDRESS OF ACCUSED (IF KNOWN)<br>Sony Dong: 9182 Carnation Drive, Westminster, CA 92683; Quang Truong: 9212 Coronet Avenue, Westminster, CA 92683 |
|---|---|---|

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION:

[18 U.S.C. §§ 545, 2(b)]

On or about December 3, 2016, in the County of Los Angeles, within the Central District of California, and elsewhere, defendants SONY DONG and QUANG TRUONG knowingly and fraudulently, imported and brought, and caused to be imported and brought, merchandise, namely Chinese Hwamei, *Garrulax canorus*, Asian songbirds, into the United States contrary to law, that is (1) without reporting or declaring said Asian songbirds to officials of the United States Bureau of Customs and Border Protection and United States Fish and Wildlife Service, in violation of Title 50, Code of Federal Regulations ("CFR"), Section 14.61 and 18 U.S.C. Section 1540(b) ; and (2) without obtaining a permit in violation of the Endangered Species Act, Title 16, United States Code, Sections 1538(c), 1540(b) and the Convention on International Trade in Endangered Species of Wild Fauna and Flora, in violation of 16 U.S.C. §§ 1538(c), 1540(b) and 50 CFR Section 23.13(a).

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

(See attached affidavit which is incorporated as part of this Complaint)

MATERIAL WITNESSES IN RELATION TO THIS CHARGE: N/A

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT<br>**LAURA CHEE** |
|---|---|
| | OFFICIAL TITLE<br>SA, U.S. Fish and Wildlife Service |

Sworn to before me and subscribed in my presence,

| SIGNATURE OF MAGISTRATE JUDGE[1]<br>PAUL L. ABRAMS | DATE<br>December 5, 2016 |
|---|---|

[1] See Federal Rules of Criminal Procedure 3 and 54

AUSA Dennis Mitchell, x12484   REC: detention

## AFFIDAVIT

I, Laura Chee, being duly sworn, declare and state as follows:

### I. INTRODUCTION

1. I am a Special Agent ("SA") with the United States Department of the Interior, Fish and Wildlife Service ("USFWS"), and am assigned to the Torrance, California field office. I have been employed by FWS as a Special Agent since 2002. During my employment with FWS, I have conducted and participated in numerous investigations pertaining to violations of federal and state wildlife laws, including investigations involving the illegal importation of protected and endangered species. Prior to joining FWS as a Special Agent, I worked as a Special Agent for the U.S. Department of Education, Office of Inspector General.

### II. PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of a criminal complaint charging SONY DONG and QUANG TRUONG with unlawfully importing, and causing the unlawful importation of, merchandise into the United States contrary to law, in violation of Title 18, United States Code, Sections 545, and 2(b).

3. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and/or information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and/or in part only.

### III. APPLICABLE LAW

4. The Endangered Species Act ("ESA") is a federal law that prohibits any wildlife trade that is contrary to the provisions of the Convention on the Trade in Endangered Species of Wild Fauna and Flora ("CITES") and any regulations promulgated by the Secretary of the Interior ("Secretary") as necessary to carry out the purposes of the ESA. See 16 U.S.C. § 1538(c)(1) and 1540(b)(1).

1

5.      Pursuant to this statutory scheme, the Secretary has prescribed regulations requiring that anyone importing or exporting wildlife into or out of the United States must file with the USFWS a completed Declaration for Importation or Exportation of Fish or Wildlife (Form 3-177), signed by the importer or the importer's agent, upon the importation of any wildlife at the place where FWS clearance under § 14.52 is requested. 50 C.F.R. § 14.61. To obtain clearance, the importer or the importer's agent must make available to a USFWS officer, or a Customs officer, all of the following: (1) all shipping documents (including bills of lading, waybills and packing lists or invoices); (2) all permits, licenses or other documents required by the laws or regulations of the United States; (3) all permits or other documents required by the laws or regulations of any foreign country; (4) the wildlife being imported or exported; and (5) any documents and permits required by the country of export or re-export for the wildlife. 50 C.F.R. § 14.52 (a) and (c).

6.      CITES is an international agreement signed by several nations, including the United States and Vietnam. Wildlife listed under CITES are divided into three Appendices:

   a.      Wildlife listed under Appendix I have the highest protection and are considered in immediate threat of becoming extinct. Trade in Appendix I wildlife is highly restricted and requires a CITES export permit or certificate of re-exportation issued by the country of export and a CITES import permit issued by the country of import.

   b.      Wildlife listed under Appendix II are considered at risk of becoming extinct and trade is closely regulated and monitored. Trade in Appendix II wildlife requires a CITES export permit or CITES certificate of re-exportation issued by the country of export. As explained below, most, if not all, of the Asian songbirds found in TRUONG's possession are listed in Appendix II of CITES.

7.      It is unlawful to import wildlife listed under any of the CITES Appendices into the United States unless the requirements of CITES are met. 50 C.F.R. §§ 23.13 (a), 23.92 (a).

## IV. STATEMENT OF PROBABLE CAUSE

8.  In April 2016, I became aware than an individual had been arrested in Vietnam for attempting to smuggle Asian songbirds, including the Chinese Hwamei, *Garrulax canorus*, Asian songbird, from Vietnam to Taiwan. I was subsequently informed that this individual's name was QUANG TRUONG ("TRUONG").

9.  Within the last few months, I provided TRUONG's name to the Passenger Analysis Unit within U.S. Customs and Border Protection ("CBP"). On October 26, 2016, CBP Officer Stephen Hawrylack sent me an email which indicated that TRUONG had made nine trips between Los Angeles and Vietnam during 2016. On that date, or within a few days of that date, I was also informed by Officer Hawrylack that TRUONG lived in Garden Grove, California.

10. On December 1, 2016, CBP Officer Hawrylack informed me, via email, that TRUONG was scheduled to arrive in Los Angeles on December 3, 2016 on China Airlines flight number 8. I know through my experience that China Airlines flight number 8 originates in Vietnam and arrives in Los Angeles. I then asked USFWS SA Erin Dean to ask CBP for assistance.

11. On December 3, 2016, I arrived at Los Angeles International Airport ("LAX") at approximately 7:00 p.m. While at LAX, I met with CBP Supervising Officer Mike Griffin, and he informed me that CBP Officer Cenobio Alvarez ("Officer Alvarez") was assigned to escort TRUONG, upon his arrival, from the China Airlines aircraft to the Secondary Customs area at LAX.

12. Based upon conversations with CBP Officer Alvarez, as well as interviews of Officer Alvarez, I am informed of the following events in connection with TRUONG's arrival at LAX on December 3, 2016. First, Officer Alvarez had been informed as to TRUONG's seat location on the China Airlines flight. Thereafter, Officer Alvarez went to that seat location where he met with TRUONG and confirmed TRUONG's identity.

   a.  On December 3, 2016, after China Airlines flight number 8 had arrived, Officer Alvarez escorted TRUONG from the airplane to passport control area at LAX. As he

was escorting TRUONG, Officer Alvarez asked TRUONG, in English, for his Customs declaration form. Officer Alvarez recalled that TRUONG said something to the effect that because TRUONG lived in America or because he was an American, he did not need to fill out such a form. Officer Alvarez indicated to TRUONG that everyone needed to complete a declaration form.

      b.     Officer Alvarez then gave TRUONG a 6059B Customs declaration form and asked TRUONG to complete the form. Officer Alvarez then assisted TRUONG in completing some of the questions which TRUONG had not answered.

      c.     Officer Alvarez then escorted TRUONG to the Global Entry Kiosk area and approached a CBP Officer who processed TROUNG's admission into the United States. Thereafter, Officer Alvarez took TRUONG to luggage carousel number seven in order to retrieve TRUONG's checked luggage.

      d.     Officer Alvarez asked TRUONG how many bags he had, and TRUONG answered that he had only one. Officer Alvarez also asked TRUONG about the color of the bag, and TRUONG said that it was red. After TRUONG did not identify certain luggage at the carousel area as being his, a China Airlines representative offered to assist in finding TRUONG's luggage. TRUONG then gave the representative his baggage claim tags.

      e.     Afterward, Officer Alvarez escorted TRUONG to the baggage control area. There, Supervising CBP Officer Mike Griffin authorized a pat-down of TRUONG, which was conducted in a private room. Thereafter, CBP Officer Griffin reviewed the 6059B Customs declaration form that TRUONG had completed and indicated to Officer Alvarez that, in response to questions on the form that asked what items TRUONG was bringing into the country, such as animals, animal/wildlife products, plants, seeds and other items (hereafter "the importing questions"), TRUONG had placed checkmarks between the yes and no answers. Officer Alvarez

4

then went over each of the importing questions with TRUONG, and TROUNG indicated that he was answering no to each of the importing questions.

  f. As TRUONG was indicating a no answer to each importing question, Officer Alvarez placed an "x" with a circle around it in the "No" answer portion for the importing questions. Officer Alvarez then asked TRUONG to place his initials at the bottom of the no answers, but TRUONG hesitated or appeared to be confused. Officer Griffin then suggested that TRUONG simply write "no to all" at the bottom of those answers, and TRUONG then wrote "No to all" at the bottom of the answers to the importing questions. TRUONG was then asked whether he wanted to change any of his answers on the Customs declaration form, and TRUONG said that he did not.

  g. Officer Alvarez then inspected a black hand carry bag type item that TRUONG had carried with him since leaving the China Airlines plane. Prior to inspecting this item, Officer Alvarez confirmed with TRUONG that the carry on item was his. Officer Alvarez then searched through the black hand carry item but did not find what he believed to be any sort of contraband.

  h. Thereafter, Officer Alvarez and TRUONG, along with other USFWS personnel and likely Homeland Security Investigations SA Nick DeSimone, went to baggage carousel number seven, and the China Airlines representative, who had earlier been given TRUONG's baggage claim tags, provided Officer Alvarez with two suitcases on a trolley. One of the suitcases was red, and the other was black.

  i. Officer Alvarez then took the two suitcases to an inspection area, and by matching baggage claim numbers, was able to confirm that the suitcases belonged to TRUONG. Officer Alvarez also asked TRUONG if this was his luggage, and TRUONG said it was. Both of the suitcases were locked; however, TRUONG provided the keys to the suitcase locks.

  j. After TRUONG opened the lock of one of the suitcases, Officer Alvarez

opened that suitcase and found a few articles of clothing at the top, along with several shroud like items. Officer Alvarez suspected that these shroud like items would be used to cover bird cages. Officer Alvarez also observed several little brown bowls that could be used to feed birds and also observed bird food. CBP Officer Nathan Tran suggested that Officer Alvarez look at the bottom of this suitcase, and Officer Alvarez observed a layer of tin foil that covered the suitcase area. Underneath the tin foil, Officer Alvarez observed white paper that was wrapped around cages. When Officer Alvarez pealed back some of the white paper, he observed the beaks of birds protruding through their cages.

      k.    Officer Alvarez then asked TRUONG to unlock the lock of the second suitcase, and TRUONG complied. Inside the second suitcase, Officer Alvarez saw a layer of tin foil, and, underneath the foil, he found more white paper wrapped cages. When Officer Alvarez pealed back one piece of white paper, he saw a bird protruding through its cage. Officer Alvarez also saw bird food, as well as small brown bowls and rectangular frames, which Officer Alvarez thought were bird-related accessories.

    13.    While I was at LAX on the night of December 3 and during the early morning hours of December 4, 2016, I spoke with CBP Officer Nathan Tran, and Officer Tran informed me of the following facts:

      a.    Officer Tran met with TRUONG in the area where TRUONG's checked suitcases were opened by Officer Alvarez.

      b.    Officer Tran asked TRUONG how long TRUONG had been in Vietnam, and TRUONG said that he had been there for two weeks. When asked why he went to Vietnam, TRUONG answered that he went there to hang out.

      c.    Officer Tran asked TRUONG what he did for employment, and TRUONG said that he was not employed. TRUONG later told Officer Tran that he was a construction worker.

      d.    When asked how he had money to travel, TRUONG answered that he had the money from before.

  e. TRUONG indicated to Officer Tran that after he had arrived in Vietnam, someone gave TRUONG the luggage.

  f. When asked if there were birds in his luggage, TRUONG answered yes. Then TRUONG said there were no birds in his luggage, but then again said that there were birds in his luggage.

  g. When asked on how many prior occasions TRUONG had done this, TRUONG said two or three times.

  14. After both of TRUONG's suitcases had been brought to an inspection area due to the risk of Avian flu transmission. I observed part of this inspection process, and I also spoke with USFWS Wildlife Inspector Cory Kawabata, who inspected TRUONG's suitcases. I have also reviewed photographs taken of the contents of both of TRUONG's suitcases. Accordingly, I am informed of the following facts:

  a. After one of the suitcases was opened, I saw multiple black/blue covers which appeared to me to be bird cage overs. Other items that I observed in the suitcase included small wooden cups, which were probably to be used for feeding birds. I also observed several plastic rectangular items. Underneath these aforementioned items, I saw a layer of tin foil.

  b. Underneath the layer of tin foil, I observed numerous small boxes that had been wrapped in white paper with numbers. From my review of a photograph of the boxes, I am informed that there were 30 boxes. I have also observed several photographs which showed me that inside each box there was a live Asian songbird.

  c. From my observations of these photographs, and from my training and experience in investigating the unlawful trafficking of Asian songbirds, I was able to identify most or all of these birds as being Chinese Hwamei, *Garrulax canorus*, which is listed on Appendix Two of CITES.

  d. Because, as one of the photos of one of TRUONG's suitcases depicted, aluminum foil was placed on top of the paper-wrapped cages in this suitcase, I believe that the Asian songbirds in that suitcase had been intentionally concealed in order to avoid detection.

    e.  USFWS Inspector Kawabata informed me that there were 15 Asian songbirds found in each of TRUONG's two suitcases.

  15.  On December 5, 2016, I sent photos of some of the Asian songbirds found in one or more of TRUONG's suitcases to USFWS Senior Forensic Scientist/Ornithologist Pepper Trail, Ph.D. Thereafter, Dr. Trial indicated to me that the birds that were sufficiently visible in the photos were all Chinese Hwamei, *Garrulax canorus*. Dr. Trail also pointed out that this was a provisional identification.

  16.  After TRUONG's suitcases had been opened, and birds had been discovered in TRUONG's luggage, I, along with USFWS SA Juan Ramirez, went to the passenger arrival area where friends and/or family greet international passengers arriving at LAX. While in that area, I recognized SONY DONG, who was previously prosecuted and convicted for illegal trafficking of Asian songbirds from Vietnam into Southern California. SA Ramirez approached DONG and asked DONG who he was there to pick up, and DONG informed SA Ramirez that he was there to pick up "Quang." SA Ramirez then asked DONG if he would be willing to go with him to another part of the terminal. DONG agreed to accompany SA Ramirez.

    a.  DONG was accompanied by a female associate, THAO PHUONG LE ("LE"), who, we later learned, is married to DONG, and she agreed to accompany us and DONG to another part of the terminal.

    b.  SA Ramirez and I, along with USFWS Wildlife Inspector Kyle McCune, escorted DONG and LE to a passenger arrival area within the Customs terminal. There, we separated LE from DONG, and I then began to conduct a recorded interview with DONG. Before asking DONG any questions, I, assisted by a Vietnamese speaking CBP Officer, provided a <u>Miranda</u> waiver form, which was written in Vietnamese, to DONG, and the Officer reviewed the form with DONG. Afterward, DONG indicated that he did not want to sign the form but was willing to answer our questions.

8

  c. I have not yet reviewed the recording of DONG's interview. However, I do recall that, during the interview, DONG said that he was a bus driver, and that he was going to transport TRUONG to his car.

  d. When informed that there were birds found in TRUONG's luggage, DONG denied knowing anything about it.

  17. At the beginning of the interview, DONG's cell phone had been obtained by SA Ramirez and had been placed on the table a few feet from where DONG was seated. During DONG's interview, DONG's cell phone repeatedly rang. On one of those occasions, SA Ramirez saw that the name, "DUC GA" appeared as the name of the caller. I recall a co-defendant with DONG, whose name is "DUC CA," was prosecuted with co-defendant DONG in this district. DONG was convicted in that case, which was approximately six years ago, of conspiring to engage in illegal trafficking of Asian songbirds. During the interview, DONG gave us his consent to search his cell phone.

  18. After conducting the interview of DONG, CBP Officers Nathan Tran and Charlie Tran conducted a pat-down of DONG, and one of the officers subsequently informed me that DONG was found to be carrying $8,000 in cash. After the pat-down, DONG was placed under arrest.

  19. After DONG was placed under arrest, I, along with SA Ramirez and CBP Officer Nathan Tran, conducted a recorded interview with TRUONG. I have not yet reviewed the entire recording of that interview. However, based on my limited review and my recollection, I do recall the following events occurring during the interview.

  a. I first was able to ascertain that TRUONG was proficient enough in the English language so that the interview could be conducted in English. SA Ramirez and I both identified ourselves to TRUONG as being special agents with the U.S. Fish and Wildlife Service.

  b. I asked TRUONG if he was willing to speak with us, and TRUONG gave an unclear response. I then read a <u>Miranda</u> waiver form, which was written in English, to

9

TRUONG, and asked TRUONG to sign the Miranda waiver if he was willing to speak with us. TRUONG then signed the Miranda waiver form.

        c.     During the interview, TRUONG stated that: (1) He was unemployed; (2) He lived in Westminster; (3) DONG was going to pick him up; (4) He was going to be paid $2,000 for the whole shipment; (5) He has brought birds to "DUC" on five prior occasions; and (6) He knew there were birds inside his luggage. When asked how many birds were in the suitcase and how he got them, TRUONG said that there were approximately 30, and that someone with a connection gets the birds. TRUONG also said that he was responsible for bringing suitcases to the U.S. but that other people would pack and bring suitcases to the Vietnam airport.

    **A.**    **Additional Investigation**

20.    On December 5, 2016, I asked USFWS Wildlife Inspector Cory Kawabata to run a check on the Law Enforcement Management Information System ("LEMIS") database which tracks whether an importer has filed an import declaration required under Title 50, Code of Federal Regulations, Section 14.61. Inspector Kawabata informed me that the LEMIS database did not show any prior import declaration, i.e., the Form 3177 declaration, filed by TRUONG or DONG.

21.    The paperwork carried by TRUONG upon his arrival at LAX did not include any type of permit, including any CITES permit, pertaining to the Asian songbirds found in TRUONG's luggage.

           **V.**    **CONCLUSION**

22.    Based on the foregoing facts, I believe there is probable cause to issue a criminal complaint charging SONY DONG and QUANG TRUONG with unlawfully importing, and

causing the unlawful importation of, merchandise into the United States contrary to law, in violation of 18 U.S.C. Section 545 and 2(b).

Laura Chee, Special Agent
United States Department of the Interior,
Fish and Wildlife Service

Subscribed to and sworn before me
this 5th day of December 2016.

HONORABLE PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE